# **EXHIBIT 3**

# INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
## International Arbitral Tribunal

| | |
|---|---|
| **Tex-Isle Supply, Inc.** § § § § **Claimant,** § § v. § § **Tecnotubi S.p.A. and Alessio Tubi S.p.A.** § § **Respondents.** § § | **ICDR Case No. 01-20-0015-5404** |

## PARTIAL FINAL AWARD

We, THE UNDERSIGNED ARBITRATORS, having been appointed in accordance with the arbitration agreement dated October 28, 2020, which was submitted to the International Centre for Dispute Resolution ("ICDR"), a division of the American Arbitration Association ("AAA"), and administered under its Commercial Rules, as fully described below and having been duly sworn, and having duly heard the proofs and arguments of the Parties, hereby render this our PARTIAL FINAL AWARD as follows.

1. Claimant Tex-Isle Supply, Inc., ("Claimant" or "Tex-Isle") is a Texas corporation based in Houston, Texas which supplies steel pipe to customers in the oil and gas industry. Respondent Tecnotubi S.p.A. is an Italian manufacturer of steel pipes ("Tecnotubi"). Respondent Alessio Tubi S.p.A. is an affiliate of Tecnotubi ("Alessio").[1]

2. A dispute has arisen among the parties concerning certain steel line pipes that Tecnotubi sold and delivered to Claimant in 2018.

3. On November 3, 2020, Claimant submitted a Demand for Arbitration ("Demand"), invoking the arbitration agreement contained in the terms and conditions of purchase referenced in the Toyota Tsusho America, Inc. ("Toyota") Purchase Order No. 20482387 (the "Toyota PO"), p.3. Demand ¶¶ 11-14. Toyota is the broker through whom Claimant placed pipe orders with Tecnotubi.

---

[1] This Partial Final Award refers to "Respondents" throughout. The Tribunal is aware that Respondent Alessio Tubi S.p.A. has alleged it is not a party to this dispute because it is not a named party to the relevant contracts. Alessio Answer ¶ 61. That allegation was not briefed by the parties for this preliminary determination on jurisdiction. The Tribunal will address it, if necessary, in the Final Award.

4. The International Centre for Dispute Resolution constituted the Tribunal on December 17, 2020. The members of the Tribunal are: Matthew E. Draper, Esq. (chair), Lucy Greenwood, Esq., and John V.H. Pierce, Esq.

5. In Tecnotubi's Answering Statement, dated December 17, 2020 ("Tecnotubi Answer"), Tecnotubi alleged that the Tribunal lacks jurisdiction because Tecnotubi never agreed to the Toyota PO. Tecnotubi Answer ¶ 61; see *also* Respondent Alessio Tubi S.p.A. Answering Statement dated December 17, 2020 ("Alessio Answer") ¶ 62.

6. On February 9, 2021, the Tribunal conducted a preliminary hearing, at which time Respondents' jurisdictional objection were discussed. On February 10, 2021, the Tribunal issued Procedural Order No. 1 in which, among other things, it determined that certain issues should be decided on a preliminary basis and set a briefing schedule for the parties to address the following questions:

> A. Which document constitutes the governing contract for the purposes of this arbitration: the Toyota Tsusho America, Inc. Purchase Order No. 20482387 (the "Toyota PO") or the Tecnotubi Contract No. S001.19 (the "Tecnotubi Contract")?
>
> B. What is the effect, if any, of the answer to Issue A on the Tribunal's jurisdiction in this arbitration?
>
> C. Is the assignment agreement between Toyota Tsusho America, Inc. and Tex-Isle Supply, Inc. (attached as Exhibit C to the Notice of Arbitration) valid and enforceable as a matter of law? In answering this question, the parties should identify the law applicable to this question and explain why they believe it applies. To the extent the parties believe that the choice of applicable law depends on the Tribunal's answer to Issue A, the parties should address Issue C on the assumption that both the Toyota PO and the Tecnotubi Contract constitute the governing contracts.

Order No. 1 ¶ 1.

7. Respondents jointly filed their opening brief concerning the jurisdictional objection on March 16, 2021 ("Objection"). Claimant submitted its Responsive Brief on April 13, 2021 ("Response"). Respondents then filed a Reply Brief on May 11, 2021 ("Reply"). The Tribunal conducted a hearing with the parties' representatives on May 25, 2021. Present at the hearing were Respondents' counsel, Steven D. Isser, Esq., and Claimant's counsel, William C. Petit, Esq., and Levi Downing, Esq.

**RELEVANT FACTUAL BACKGROUND**

8. On September 20, 2018, Maura Accini of Tecnotubi sent Tecnotubi's "official offer" to Tex-Isle for 100,000 feet of line pipe. Email from M. Accini to R. Smithey, September 20, 2018 (Cl. Ex. 8). The email concludes, "I wait to know [the] name of your trader." *Id.* Attached to the email was a two-page document, which Respondents refer to as "a draft of the Tecnotubi Contract," (Reply at 4) setting out the price, quantity and specifications of the line pipe Tex-Isle was seeking, along with, among other things, an arbitration clause. Ex. 8, pp. 19-20. The arbitration clause provides:

> E.  Jurisdiction, Legislation, Territorial Jurisdiction
> Any disputes arising concerning the interpretation, execution, fulfillment, breach, termination, and/or any other matter relating to the contract, shall be settled in accordance with Swiss law and Swiss jurisdiction, the place of arbitration will be Geneva.

Cl. Ex. 8, p. 20, ¶ E.

9. On September 27, 2018, Todd Rae of Toyota emailed Tecnotubi stating in relevant part: "At your earliest convenience, please email an offer addressed to Toyota Tsusho America, we need this for our internal documentation requirements." Email from T. Rae to M. Accini, September 27, 2018 (Cl. Ex. 9).

10. On September 28, 2018, Ms. Accini of Tecnotubi emailed Mr. Rae of Toyota stating in relevant part:

> Here attached [is] our contract.  My chief is on a business trip. As soon [as] He'll back I will ask him to sign it and then will resend to you.

Email from M. Accini to T. Rae, September 28, 2018 (Cl. Ex. 9).  Attached to the email was a three-page "Contract" listing the "Buyer" as Toyota, and the "Seller" as Tecnotubi ("Proposed Tecnotubi Contract"). Cl. Ex. 9, p. 3.  On the final page of the Proposed Tecnotubi Contract is an arbitration clause identical to the one in Tecnotubi's original offer:

> E.  Jurisdiction, Legislation, Territorial Jurisdiction
> Any disputes arising concerning the interpretation, execution, fulfillment, breach, termination and/or any other matter relating to the contract, shall be settled in accordance with Swiss law and Swiss jurisdiction, the place of arbitration will be Geneva.

Cl. Ex. 9, p. 5, ¶ E.

11. On October 3, 2018, Mr. Rae replied to Ms. Accini with the message "Please find the TAI PO attached for your records."  Email from T. Rae to M. Accini, October 3, 2018 (Cl. Ex. 11).  Attached to the email is a one-page Toyota "Purchase Order" bearing "P.O. Number 20482387," indicating "TECNOTUBI SPA" as the supplier, and listing pipe specifications and shipment details, among other things (the "Toyota PO"). Cl. Ex. 11 p. 3.  In addition, the Toyota PO provides:

> THIS **P.O. AND LINE NUMBER** MUST APPEAR ON ALL INVOICES, PACKING SLIPS, LABELS, CORRESPONDENCE, FREIGHT BILLS, ETC

*Id.* (emphasis in original).  At the bottom of the page, the following sentence appears:

> By accepting this Purchase Order, Supplier acknowledges that it has read and accepted Buyer's terms and conditions of purchase as set forth and available at http://www.taiamerica.com/related-links/

*Id.*

ICDR Case No. 01-20-0015-5404                     3

12. The Toyota General Terms and Conditions for Purchase ("T&Cs") are available at the above link. The first paragraph of the T&Cs defines the terms "Purchase Order" and "Contract" interchangeably as "Buyer's Purchase Order form which is issued herewith and incorporated herein by reference … these General Terms and Conditions, and any other document(s) specifically made a part of this Purchase Order by Buyer." Cl. Ex. 12, p. 1.

13. The second paragraph of the T&Cs provide:

> NO MODIFICATIONS. These terms and conditions supersede any conflicting conditions received from Seller. Any Seller generated document which contains terms additional to or inconsistent with the terms of this Purchase Order, or a rejection of any terms of this Purchase Order, shall be deemed to be a counter offer to Buyer and shall not be binding upon Buyer unless specifically accepted in writing by an authorize representative of Buyer, notwithstanding any course of performance or contrary provision of the Uniform Commercial Code. Acceptance of this Order is expressly limited to its terms and this clause shall constitute a specific objection to any term not specifically accepted by Buyer.

*Id.*

14. On the third and final page of the T&Cs, there is an entire agreement clause and an arbitration clause providing for arbitration in New York under the Commercial Arbitration Rules of the AAA:

> ENTIRE AGREEMENT. The Contract constitutes the entire agreement between the parties with respect to its subject matter, and supersedes all prior oral or written representation or agreements by the parties with respect to the subject matter of the Contract, including Buyer's request for quotation and Seller's quotation unless specifically incorporated in the Contract. No subsequent terms, conditions, understandings, or agreements purporting to modify the terms of the Contract will be binding unless in writing and signed by both parties.
>
> APPLICABLE LAW AND ARBITRATION. This Purchase Order, the Contract and any contracts relating hereto or formed hereunder, unless otherwise stipulated or agreed to in writing, shall be construed according to and governed by the internal laws of the State of New York and without the application of any presumption against a party as draftsman. Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration in the City of New York, New York, in accordance with the Commercial rules of the American Arbitration Association and judgment upon the award rendered by the Arbitrator(s) may be entered in any court have jurisdiction thereof. The award of the Arbitrator(s) shall be made in writing and shall contain the reasons or grounds therefore. The Arbitrator shall not have the power to award consequential or incidental damages as against Buyer.

*Id.* at 3.

15.  Following Mr. Rae's sending of the Toyota PO, the parties had the following exchange on October 4, 2018:

- Ms. Accini responded to Mr. Rae's email attaching the Toyota PO, stating "thanks very much. I needed for the bank." Email from M. Accini to T. Rae, October 4, 2018 (Cl. Ex. 13).
- Mr. Rae replied: "Thank you for your confirmation. We are releasing the funds today." Email from T. Rae to M. Accini, October 4, 2018 (Cl. Ex. 14. p. 3).
- Ms. Accini responded: "too competent. Thanks very much! I'm still waiting of confirmation from our bank, I will send you later on tomorrow morning (Italy time)." Email from Ms. Accini to T. Rae, October 4, 2018 (Cl. Ex. 14, p. 2).
- Mr. Rae replied: "My apologies – I thought we had your approval already." Email from T. Rae to M. Accini, October 4, 2018 (Cl. Ex. 14, p. 2).
- Ms. Accini responded: "Don't worry. Everything is correct anyway! Sure they will give me the confirmation, you did everything in the correct way. No problem at all!" Email from Ms. Accini to T. Rae, October 4, 2018 (Cl. Ex. 14, p. 1).

16.  Subsequent to this exchange, Respondent shipped the pipes to Claimant.

17.  After the parties' dispute arose, but before Claimant submitted the Demand for Arbitration, Claimant and Toyota entered into an Assignment Agreement on October 28, 2020. Cl. Ex. 17. The Assignment Agreement provides, among other things, that Toyota "hereby irrevocably assigns unto Tex-Isle all rights, title, and interest that [Toyota] may have or hold as against Alessio and/or Tecnotubi relating to and concerning the Tecnotubi Order and the ERW Steel Pipe sold by Tecnotubi and/or Alessio to" Toyota. *Id*. ¶ 1. The term "Tecnotubi Order" is defined as "certain quantities of ERW Steel Pipe that TAI purchase from Tecnotubi S.p.A. ('Tecnotubi') and/or Alessio Tubi S.p.A. ('Alessio') pursuant to TAI Purchase Order No. 20482387." *Id.* at 1.

## ARGUMENTS OF THE PARTIES

18.  The parties agree that the law that the Tribunal must apply to determine the outcome of their dispute over the governing contract is the United Nations Convention on Contracts for the International Sale of Goods, 1489 U.N.T.S. 3 (1983) ("CISG"). Objection at 7; Response at 10; Reply at 1. Both parties further agree that CISG Article 19 – which adopts the "mirror image" rule of offer and acceptance – applies. Objection at 8-9; Response at 10.[2]

19.  Respondents argue that Ms. Accini employed terminology of contract formation in her emails to Claimant (e.g., "official offer" and "contract"), whereas Claimant (and Toyota) referred to the Toyota PO as simply a document "for your records, etc." Respondents argue, therefore, that CISG Article 18(1) is determinative. Article 18(1) requires that acceptance be reflected in a statement or conduct demonstrating assent to an offer. Here, Respondents argue, Claimant's failure to state that the Toyota PO was a legally relevant counteroffer (containing different mandatory terms) means that Claimant has not sufficiently demonstrated that it was rejecting Respondents' offer: "Claimant never stated that it was

---

[2]  Counsel for both Claimant and Respondents also agreed during the hearing that CISG Article 19 applies.

ICDR Case No. 01-20-0015-5404                5

sending the Toyota PO as a governing agreement, in response to the 'contract' sent by Tecnotubi." Reply at 2.

20. Claimant argues that Article 19 of the CISG, rather than Article 18, controls. Claimant argues that since the Toyota PO contained materially different terms from the Proposed Tecnotubi Contract, Article 19 dictates that this operated as a rejection of the Proposed Tecnotubi Contract. Respondents subsequently performed, Claimant says, thereby accepting the Toyota PO. As a result, Claimant argues, the Toyota PO governs.

## THE TRIBUNAL'S DETERMINATION

21. For the reasons set forth below, the Tribunal concludes that the Toyota PO is the parties' governing contract, and that the Tribunal therefore has jurisdiction under the arbitration agreement in the T&Cs to determine the parties' disputes (Section I). Further, the Tribunal concludes that Toyota assigned to Claimant any rights Toyota had against Respondents under the Toyota PO (Section II).

## REASON FOR PARTIAL FINAL AWARD

### I. The Toyota PO is the Governing Contract

22. The questions presented are:

1) Did Claimant expressly accept or reject the Proposed Tecnotubi Contract? or
2) If Claimant "purported" to accept the Proposed Tecnotubi Contract, did its reply materially alter the terms of the offer, and therefore represent a counter-offer?
3) If so, did Respondents accept Claimant's counter-offer?

**QUESTION 1:** *Did Claimant expressly accept or reject the Proposed Tecnotubi Contract?*

23. The parties agree that the CISG applies. To answer the first question, therefore, we look to CISG Article 18(1), which defines acceptance of an offer. Article 18(1) provides:

> A statement made by or other conduct of the offeree indicating assent to an offer is an acceptance. Silence or inactivity does not in itself amount to acceptance.

24. Respondents argue that, by replying to the Proposed Tecnotubi Contract by sending the Toyota PO "merely for Tecnotubi's 'records,' … Claimant accepted the" Proposed Tecnotubi Contract. Reply at 2. Respondents rely, in particular, on the fact that Claimant did not expressly state in its email correspondence that the Toyota PO was an "offer" or a "contract," or otherwise constituted the governing document for the transaction. *Id.* at 5.

25. The Tribunal does not consider Claimant's statement on which Respondents rely – "Please find the TAI PO attached for your records"[3] – to constitute a "statement" or "conduct" indicating assent pursuant to CISG Article 18(1). Rather, the statement seems on its face to be unresponsive and ambiguous. However, in the Tribunal's view, the attached Toyota PO dispels any ambiguity in the

---

[3] Email from T. Rae to M. Accini, October 3, 2018 (Cl. Ex. 11)

ICDR Case No. 01-20-0015-5404    6

covering email. The Toyota PO incorporates the T&Cs with the following statement immediately beneath the signature line:

> By accepting this Purchase Order, Supplier acknowledges that it has read and accepted Buyer's terms and conditions of purchase as set forth and available at http://www.taiamerica.com/related-links/

26. Claimant argues that the T&Cs were incorporated into the Toyota PO. Respondents do not argue to the contrary.

27. The first sentence of the second paragraph of the T&Cs states:

> NO MODIFICATIONS. These terms and conditions supersede any conflicting conditions received from Seller.

28. Thus, the T&Cs expressly state that the Toyota PO "supersedes" any prior Tecnotubi conditions. In addition, the T&C's entire agreement clause makes clear that the Toyota PO "supersedes all prior … written … agreements by the parties":

> ENTIRE AGREEMENT. The Contract constitutes the entire agreement between the parties with respect to its subject matter, and supersedes all prior oral or written representation or agreements by the parties with respect to the subject matter of the Contract, including Buyer's request for quotation and Seller's quotation unless specifically incorporated in the Contract….

29. In light of this language in the T&Cs, the Tribunal considers that there was no purported "acceptance" of the Proposed Tecnotubi Contract" by Claimant pursuant to CISG Article 18(1).

**QUESTION 2:** *Did Claimant "purport" to accept the Proposed Tecnotubi Contract, and if so, did its reply materially alter the terms of the offer, and therefore represent a counter-offer?*

30. The apparent lack of acceptance notwithstanding, both parties assume that Claimant replied to the Proposed Tecnotubi Contract with a "purported" acceptance.[4] Assuming for present purposes that Claimant purported to accept the Proposed Tecnotubi Contract by Claimant, the Parties are correct that CISG Article 19 applies. For the reasons set forth below, the Tribunal concludes that the Toyota PO contains material differences with the Proposed Tecnotubi Contract, and therefore constitutes a rejection and counter-offer pursuant to CISG Article 19.

31. CISG Article 19 provides:

> (1) A reply to an offer which purports to be an acceptance but contains additions, limitations or other modifications is a rejection of the offer and constitutes a counter-offer.

---

[4] *See*, e.g., Respondents' Reply at 2 ("by replying that the Toyota PO was being sent merely for Tecnotubi's 'records,' by Claimant's words Claimant accepted the Tecnotubi Contract"); Claimant's Response at 10 (agreeing that CISG Art. 19(1) determines whether Claimant accepted).

ICDR Case No. 01-20-0015-5404              7

> (2) However, a reply to an offer which purports to be an acceptance but contains additional or different terms which do not materially alter the terms of the offer constitutes an acceptance, unless the offeror, without undue delay, objects orally to the discrepancy or dispatches a notice to that effect. If he does not so object, the terms of the contract are the terms of the offer with the modifications contained in the acceptance.
>
> (3) Additional or different terms relating, among other things, to the price, payment, quality and quantity of the goods, place and time of delivery, extent of one party's liability to the other or the settlement of disputes are considered to alter the terms of the offer materially.

32. There is no dispute between the parties that the Proposed Tecnotubi Contract constituted an "offer," and that Claimant's October 3, 2018, email attaching the Toyota PO constitutes a "reply" to that offer. Therefore, Article 19 applies.

33. The Toyota PO and Proposed Tecnotubi Contract are not identical. Indeed, the parties agree that the Toyota PO contains a different arbitration clause (arbitration in New York administered by the AAA and under the Commercial Arbitration Rules) from the Proposed Tecnotubi Contract (arbitration in Geneva). This change alone is *per se* material pursuant to CISG Article 19(3). There are other material differences as well. *See* Respondent's Opposition at 9-10. Therefore, pursuant to Article 19, the Toyota PO constituted both a rejection of the Proposed Tecnotubi Contract and a counter-offer.

34. The effect of Article 19 – which might seem troubling in some circumstances – is that the content of Claimant's representative's cover email responding to Respondent's offer is virtually irrelevant. The only legally significant fact, according to Article 19, is whether the attached Toyota PO, including the T&Cs it incorporates, contains provisions that are materially different from the Proposed Tecnotubi Contract. Here, the cover email said nothing about whether Claimant accepted or rejected the Proposed Tecnotubi Contract. Respondent puts great weight on this fact. But a consequence of Article 19 is that even if Claimant had provided some expression of acceptance in the cover email, the content of the Toyota PO and T&Cs would still control, and those documents clearly contain material differences from the Proposed Tecnotubi Contract. For this reason, the Tribunal concludes that the Proposed Tecnotubi Contract does not govern the parties' relationship.

**QUESTION 3:** *Did Respondents accept Claimant's counter-offer?*

35. The Toyota PO acted as a rejection of the Proposed Tecnotubi Contract. But does it control the parties' relationship? Claimant argues that Respondents accepted the counter-offer contained in the Toyota PO because Respondents did not object to the Toyota PO, referenced the Toyota PO in future correspondence, and performed after receiving the Toyota PO. Reply at 12-13.

36. As noted, CISG Article 18(1) addresses the question of "acceptance":

> A statement made by or other conduct of the offeree indicating assent to an offer is an acceptance. Silence or inactivity does not in itself amount to acceptance.

ICDR Case No. 01-20-0015-5404               8

37.     As an initial matter, the Tribunal notes that Respondent's lack of express rejection or acceptance of the Toyota PO does not alter the analysis one way or the other because "silence or inactivity does not itself amount to acceptance." CISG Art. 18(1).   Claimant's other two reasons for Respondents' acceptance of the Toyota PO have more merit, however.

38.     With regard to Claimant's assertion that Respondents referenced the Toyota PO in subsequent correspondence, Respondents concede that they did.  Respondents argue, however, that they did so not out of any recognition that the Toyota PO was the "operative contract," but simply because it was required "by the letter of credit provided by Tecnotubi to secure payment by Claimant."  Reply at 6.

39.     Respondents' argument ignores the fact that the Toyota PO itself also requires that all documents reference the Toyota PO.  *See* ¶ 11, above.  More broadly, the Tribunal does not find it credible that Respondent would consider a document that is mandatorily cited on all documentation to not have any legal significance. This is particularly so given that the Respondents do not identify any subsequent documents exchanged by the parties that expressly refer to the document Respondents argue is operative – the Proposed Tecnotubi Contract.  The Tribunal finds, therefore, that the parties' use of the Toyota PO number in subsequent correspondence is conduct indicating assent to an offer.  CISG Art. 18(1).

40.     Respondents do not contest Claimant's remaining contention that Respondent subsequently performed.  At the hearing, Respondent's counsel suggested that Respondent delivered the line pipe because it was operating under the assumption that the Proposed Tecnotubi Contract governed.  But Respondents offer no evidence that this was Respondents' contemporaneous assumption.  In any case, Respondents' alleged assumption was not shared by Claimant and, as discussed above, is (and was) contrary to CISG Articles 18 and 19.

41.     In sum, the Tribunal concludes that Respondents accepted the Toyota PO by including references to it in subsequent correspondence, and by performing in conformity with the requirements of the Toyota PO.  As a result, the Tribunal concludes that the Toyota PO, including the incorporated T&Cs, govern the parties' relationship.

## II.     Toyota Properly Assigned Its Claims in this Arbitration to Tex-Isle

42.     The Assignment Agreement assigned to Claimant Toyota's "rights, title, and interest that [Toyota] may have or hold as against Alessio and/or Tecnotubi relating to and concerning the Tecnotubi Order and the ERW Steel Pipe sold by Tecnotubi and/or Alessio to" Toyota.  *Id*. ¶ 1.  As noted, the term "Tecnotubi Order" is expressly defined in relation to the Toyota PO.  *Id.* at 1.

43.     Respondents argue that the Assignment Agreement did not properly assign Toyota's rights in this dispute to Claimant because the Toyota PO to which it refers is "null and void."  Objection at 11-12.  As set forth above, the Tribunal has concluded, to the contrary, that the Toyota PO governs the parties' relationship.  Therefore the reference to the Toyota PO in the Assignment Agreement establishes the proper assignment of Toyota's claims to Claimant for the purposes of this arbitration.  The Tribunal concludes, therefore, that Claimant was assigned Toyota's enforceable legal rights and has standing to bring its claims in this arbitration against Respondents.

**Partial Final Award**

For the foregoing reasons, the Tribunal enters a Partial Final Award as follows:

1. The Tribunal declares as follows:

    a) Toyota Tsusho America, Inc. Purchase Order No. 20482387 is the governing contract between the parties in relation to the claims in this arbitration.

    b) The arbitration agreement in the Toyota Tsusho America, Inc.'s General Terms and Conditions of Purchase is valid and enforceable between the parties, and this Tribunal was properly constituted in accordance with its terms.

    c) The Assignment Agreement is valid and enforceable, and Toyota Tsusho America, Inc. assigned its claims in this arbitration to Claimant Tex-Isle Supply, Inc.

2. Claimant Tex-Isle Supply, Inc.'s application for its attorneys' fees in relation to Respondents' jurisdictional challenge is deferred until the Final Award.

3. The Tribunal does not decide Respondent Alessio Tubi S.p.A.'s claim that it is not a party to this dispute because it is not a named party to the relevant contracts. The Tribunal will address that claim, if necessary, in the Final Award.

4. Any additional matters not addressed in this partial final award, will be addressed in the final award.

5. Pursuant to Procedural Order No. 1, ¶ 5, the Tribunal will conduct a conference with the Parties at 10 AM ET on August 23, 2021.

6. The Tribunal asks that the Parties confer with each another in advance of the conference regarding the procedural aspects of the case and timetable, and send the Tribunal a report on any agreements reached and remaining areas of disagreement. The Tribunal directs the Parties to the topics listed in its letter of January 26, 2021. The parties are requested to send the Tribunal their report by August 19, 2021.

This Partial Final Award is in settlement of Respondents' objection to jurisdiction. The Tribunal has considered all arguments and evidence submitted by the Parties even if not specifically discussed herein.

We hereby certify that, for the purposes of Article I of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Partial Final Award was made in New York, New York, United States of America.

| July 27, 2021 | _[signature]_ |
|---|---|
| Dated | Matthew E. Draper, Arbitrator |

| July 27, 2021 | _[signature]_ |
|---|---|
| Dated | Lucy Greenwood, Arbitrator |

| July, 27, 2021 | _[signature]_ |
|---|---|
| Dated | John V.H. Pierce, Arbitrator |

ICDR Case No. 01-20-0015-5404             11

I, Matthew E. Draper, the duly appointed Arbitrator in the above matter, do hereby affirm upon my oath as Arbitrator that I am the individual in and who executed the award and that the annexed is a true and correct copy of my Final Award in the above matter.

July 27, 2021
Dated

Matthew E. Draper, Arbitrator

I, Lucy Greenwood, the duly appointed Arbitrator in the above matter, do hereby affirm upon my oath as Arbitrator that I am the individual in and who executed the award and that the annexed is a true and correct copy of my Final Award in the above matter.

July 27, 2021
Dated

Lucy Greenwood, Arbitrator

I, John V.H. Pierce, the duly appointed Arbitrator in the above matter, do hereby affirm upon my oath as Arbitrator that I am the individual in and who executed the award and that the annexed is a true and correct copy of my Final Award in the above matter.

July 27, 2021
Dated

John V.H. Pierce, Arbitrator