UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                               :
TECNOTUBI S.P.A.,                                 :
                                               :
                                  Petitioner, :
                                               :                   23-CV-7263 (VSB)
             - against -                     :
                                               :                     **OPINION & ORDER**
                                               :
TEX-ISLE SUPPLY, INC. and ALESSIO     :
TUBI S.P.A,                                        :
                                               :
                                  Respondents. :
                                               :
-----------------------------------------------------------X

Appearances:

Steven David Isser
Law Offices of Steven D. Isser
New York, NY
*Counsel for Petitioner*

Levi Downing
Kelley Drye & Warren LLP
New York, NY

William Creeger Petit
Jennifer Caplan Barks
Kelley Drye & Warren LLP
Houston, TX
*Counsel for Respondent Tex-Isle Supply, Inc.*

VERNON S. BRODERICK, United States District Judge:

      Petitioner Tecnotubi S.P.A ("Tecnotubi" or "Petitioner") brings this motion pursuant to

Section 10(a)(4) of the Federal Arbitration Act for an order vacating and setting aside or

modifying the arbitration award (the "Final Award") issued by the arbitration panel (the

"Tribunal"). *See* 9 U.S.C. § 10(a)(4). Respondent Tex-Isle Supply, Inc. ("Tex-Isle" or

"Respondent") opposes the motion, and cross moves to confirm the Final Award. For the

reasons that follow, Tecnotubi's motion to vacate is DENIED and Tex-Isle's cross motion to confirm the Final Award is GRANTED.

### I. Background and Procedural History

#### A. *Underlying Arbitration Claims and the Arbitration*

The underlying arbitration in this matter arose from a dispute regarding steel pipe products that Tex-Isle, a distributor of steel pipe to the oil and gas industry, purchased from Tecnotubi, an Italian pipe manufacturer. (Doc. 1 ¶¶ 6–10; Doc. 12 ("Isser Decl.") ¶ 2). In June 2018, Tex-Isle began placing orders for Tecnotubi's steel pipe products through Toyota Tsusho America, Inc. ("Toyota"), a third-party broker. (Doc. 22 at 4.) Tecnotubi's sister company, Alessio Tubi[1], manufactured the pipes. On November 11, 2020, Tex-Isle filed a Demand for Arbitration in New York with the International Center for Dispute Resolution ("ICDR") of the American Arbitration Association against Tecnotubi and Alessio. (Isser Decl. ¶ 3; Isser Decl. Ex. 15 (Demand for Arbitration).) Tex-Isle alleged breach-of-contract and breach-of-warranty claims based on allegedly defective pipes. (Isser Decl. ¶ 4.) The parties disagreed about which contract governed disputes between the parties. In its Demand for Arbitration, Tex-Isle relied on the arbitration clause contained in the Toyota Tsusho America, Inc. Purchase Order No. 20482397 (the "Toyota PO") and the associated Terms and Conditions, which required arbitration in New York. (*Id.* ¶ 5; Isser Decl. Ex. 15.) Tecnotubi, however, claimed that the governing agreement was the Tecnotubi Contract No. 20482387 (the "Tecnotubi Contract"), which required arbitration in Geneva, Switzerland. (Isser Decl. ¶ 8.)

On January 26, 2021, the Tribunal asked the parties to confer and to address whether Tecnotubi's jurisdictional objections should be resolved as a preliminary matter. (Doc. 23

---

[1] Alessio was a party in the underlying arbitration but is not a party to the instant motion.

("Downing Decl.") ¶ 4; Downing Decl. Ex. 2.) The parties submitted a joint letter to the Tribunal on February 5, 2021 and agreed that the Tribunal "should decide as a preliminary matter which document constitutes the governing contract." (Downing Decl. ¶ 3; Downing Decl. Ex. 1.) On February 10, 2021, the Tribunal issued Procedural Order No. 1, deciding that the Tribunal would determine which contract governed the parties' relationship, whether the Tribunal had jurisdiction, and whether an agreement assigning Toyota's claims to Tex-Isle was valid and enforceable. (Isser Decl. ¶ 13; Isser Decl. Ex. 6). The Tribunal also asked the parties for preliminary briefing regarding the following questions: (i) whether the Toyota PO or the Tecnotubi Contract governed, and (ii) what effect, if any, that answer may have on the Tribunal's jurisdiction. (Isser Decl. Ex. 6.) The Parties briefed those issues. (Isser Decl. ¶ 14; Isser Decl. Exs. 7–9.) The Tribunal issued a Partial Final Award on July 27, 2021, concluding that the Toyota PO governed disputes between the parties, and finding that the Tribunal had jurisdiction under the arbitration agreement to preside over the arbitration in New York. (Isser Decl. ¶¶ 15–16; Isser Decl. Ex. 2 ("Partial Award").)

After holding the evidentiary hearing from November 7–9, 2022 and on February 3, 2023 in New York, New York, the Tribunal issued the Final Award on May 23, 2023, in which it determined that the pipe Tex-Isle purchased from Tecnotubi was defective. (Isser Decl. ¶ 17; Isser Decl. Ex. 1 ("Final Award").)

### B. *Procedural History*

On August 16, 2023, Tecnotubi filed a petition to vacate and/or modify the Final Award. (Doc. 1.) On August 17, 2023, Tecnotubi filed an amended motion to vacate the Final Award, (Doc. 9), as well as an accompanying declaration with exhibits, (Doc. 12), and memorandum of law, (Doc. 13). On September 7, 2023 Tex-Isle filed its opposition to Tecnotubi's motion to

3

vacate and cross motion to confirm the Final Award, (Doc. 21) and an accompanying memorandum of law, (Doc. 22), and declaration with exhibits, (Doc. 23). Tecnotubi filed its reply in support of its motion to vacate and in opposition to Tex-Isle's motion to confirm on September 14, 2023, (Doc. 27), and Tex-Isle filed its reply in support of its cross motion to confirm on September 21, 2023, (Doc. 29.)

## II.     Legal Standard

The Federal Arbitration Act ("FAA") provides a "streamlined" process for a party seeking "a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *Hall St. Assocs. L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). In reviewing an arbitration award, a federal district court "can confirm and/or vacate the award, either in whole or in part." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006). Specifically, under Section 9 of the FAA, "a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11." *Hall St. Assocs.*, 552 U.S. at 582 (quoting 9 U.S.C. § 9).

In limited circumstances, if a party seeks vacatur of an arbitral award based on questions of arbitrability, the party may seek a de novo court review. *See Schneider v. Kingdom of Thailand*, 688 F.3d 68, 71 (2d Cir. 2012) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). If, however, there is "clear and unmistakable evidence" that the parties agreed to submit an issue of arbitrability to the arbitrator, courts are to review that "arbitrator's arbitrability decision" with deference. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943–44 (1995) (internal quotation marks omitted and alterations adopted). In most circumstances, therefore, "[a] motion to vacate filed in a federal court is not an occasion for de novo review of an arbitral award." *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004).

Under Section 10 of the FAA, a district court may vacate an arbitration award on four grounds:  (1) corruption or fraud, (2) "evident partiality or corruption in the arbitrators," (3) misconduct by the arbitrators, or (4) "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).  "Consistent with federal policy favoring arbitration, these vacatur provisions are to be accorded the narrowest of readings." *Beljakovic v. Melohn Properties, Inc.*, No. 04-CV-3694, 2012 WL 5429438, at *2 (S.D.N.Y. Nov. 7, 2012) (internal quotation marks omitted), *aff'd*, 542 F. App'x 72 (2d Cir. 2013).  The Second Circuit has found "as judicial gloss on these specific grounds for vacatur of arbitration awards," that a "court may set aside an arbitration award if it was rendered in manifest disregard of the law." *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451 (2d Cir. 2011) (internal quotation marks omitted and alteration adopted) (collecting cases).  In other words, "the showing required to avoid confirmation is very high." *D.H. Blair*, 462 F.3d at 110.

"Normally, confirmation of an arbitration is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" *D.H. Blair*, 462 F.3d at 110 (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)).  "A court may decide the merits of a petition to confirm or vacate an arbitration award 'based solely on the papers submitted by the parties in support of their motions.'" *Companion Prop. & Cas. Ins. Co. v. Allied Provident Ins., Inc.*, No. 13-CV-7865, 2014 WL 4804466, at *2 (S.D.N.Y. Sept. 26, 2014) (quoting *Productos Mercantiles E Industriales, S.A. v. Faberge USA*, 23 F.3d 41, 46 (2d Cir. 1994)).  The party challenging an arbitration award must demonstrate "that the award falls within a very narrow set of circumstances delineated by statute and case law." *Leeward Constr. Co. v. Am. Univ. of Antigua-Coll. of Med.*, 826 F.3d 634, 638 (2d Cir. 2016) (quoting *Duferco Int'l*

*Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003)); *accord Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71–72 (2d Cir. 2012) (observing that "[a] court's review of an arbitration award is . . . severely limited," and that a party "must clear a high hurdle" in order to obtain vacatur (internal quotation marks omitted)).

"The role of a district court in reviewing an arbitration award is 'narrowly limited' and 'arbitration panel determinations are generally accorded great deference under the [FAA].'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 103 (2d Cir. 2013) (quoting *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 19 (2d Cir. 1997)). "This deference promotes the 'twin goals of arbitration, namely settling disputes efficiently and avoiding long and expensive litigation.'" *Id.* (quoting *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 405 (2d Cir. 2009)). "Consequently, the burden of proof necessary to avoid confirmation of an arbitration award is very high, and a district court will enforce the award as long as 'there is a barely colorable justification for the outcome reached.'" *Id.* at 103–04 (quoting *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008)). Thus, even if the court is convinced that "the arbitrator committed serious error, the award should not be vacated so long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Supreme Oil Co. v. Abondolo*, 568 F. Supp. 2d 401, 406 (S.D.N.Y. 2008) (internal quotation marks omitted and alteration adopted).

### III. Discussion

#### A. *Tecnotubi's Motion to Vacate the Final Award*

Tecnotubi identifies two grounds that it claims independently justify vacatur. First, it argues that the Tribunal exceeded its powers pursuant to § 10(a)(4) because it lacked the

6

contractual authority to hold arbitration in New York.  (Doc. 13 at 13.)  It alleges that the Tribunal erroneously relied on the Toyota PO and its New York arbitration clause because the Tecnotubi Contract and its Swiss arbitration clause governed the parties' dispute.  (*Id*. at 8.)  In response, Tex-Isle argues that, as an initial matter, the only question properly before me is whether in the underlying arbitration, the Tribunal had the power to determine its own jurisdiction, and therefore to decide which document governed the parties' dispute.  (Doc. 22 at 2.)  Tex-Isle argues, and Tecnotubi does not appear to dispute, that the parties expressly authorized the Tribunal to decide this question.  (*Id.*)  Although Tecnotubi's opening brief fails to address this threshold inquiry, Tex-Isle argues that (1) because the Tribunal had authority to decide this issue, there are no grounds for vacatur under the applicable standard, which affords the Tribunal great deference, and (2) that under any legal standard, the Tribunal's determination was correct.  (*Id.* at 2–4.)

Second, Tecnotubi argues that the Tribunal's substantive determinations in issuing the Final Award otherwise demonstrate that the Tribunal "imperfectly executed its powers and/or manifestly disregarded the law."  (Doc. 13 at 14.)  Tex-Isle asserts that Tecnotubi's mere disagreement with the Tribunal's Final Award does not establish that the Tribunal "imperfectly executed [their powers]" or manifestly disregarded the law, and that because no grounds for vacatur exist, the Final Award must be confirmed.  (Doc. 22 at 3–4.)

### 1.  The Tribunal's Jurisdiction

I agree with Tex-Isle that the threshold issue in this case is whether the Tribunal had the authority to decide its own jurisdiction.  If that question was properly before the Tribunal, then I must review the Tribunal's decision with deference, and may only vacate on the grounds set forth in Section 10 of the FAA, *see* 9 U.S.C. § 10(a), or if I find that the Tribunal "manifestly

7

disregarded" the law, *Schwartz*, 665 F.3d at 451; *see also Wallace*, 378 F.3d at 189 ("[A] party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." (internal quotation marks omitted)).

As an initial matter, Tecnotubi argues that this jurisdictional question is not an issue of "arbitrability" because it does not concern whether the parties agreed to arbitrate their dispute, but rather which contract governed. (Doc. 27 at 4.) It asserts that it had "no choice" but to submit this issue to the Tribunal in the first instance, and that I should now review de novo whether the Tribunal exceeded its powers in finding that the Toyota PO required that the arbitration be held in New York and issuing the Partial Final Award. (*Id.*) Tex-Isle asserts that regardless of whether the dispute over the governing contract is an issue of arbitrability, "the issue was properly submitted to the Tribunal for determination." (Doc. 29 at 4.) Tex-Isle contends that both parties "clearly and unmistakably" agreed to resolve this threshold issue by arbitration when they consented to the Tribunal's determination of which document was the governing contract and, thus, consented to the Tribunal deciding whether the Swiss or New York arbitration provision covered the dispute. (Doc. 22 at 2.)

Regardless of whether the jurisdictional question concerns an issue of arbitrability or not, I find that de novo review is not warranted. The law is clear that a party seeking vacatur of an arbitral award may only seek de novo review on questions of arbitrability. *See Schneider v. Kingdom of Thailand*, 688 F.3d 68, 71 (2d Cir. 2012) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, (2002)). Even if an issue concerns a question of arbitrability, however, if there is "clear and unmistakable evidence" that the parties agreed to delegate the issue to the arbitrator, then courts are to review that decision with deference. *See First Options of Chi., Inc.*

8

*v. Kaplan*, 514 U.S. 938, 943–44 (1995) (internal quotation marks omitted and alterations adopted).  The threshold question of whether the jurisdictional question was correctly before the Tribunal is a question as to whether the parties agreed to arbitrate that particular issue.  "[B]efore an agreement to arbitrate can be enforced, the district court must first determine whether such agreement exists between the parties."  *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017).  Tecnotubi does not address the jurisdictional question in its opening brief, and side-steps the issue in reply by arguing that it "had no choice but to submit the issue of which contract governed to the Tribunal."  (Doc. 27 at 3.)  This argument is unavailing based on the undisputed facts.  The parties agreed in a joint letter submitted to the Tribunal on February 5, 2021 to submit the jurisdictional question to the Tribunal.  (Downing Decl. Ex. 1. at 1 ("The Parties agree that the Panel should decide as a preliminary matter which document constitutes the governing contract.").)  The Tribunal determined that the Toyota PO governed the contract and that, accordingly, the New York arbitration provision governed the parties' dispute.  (Partial Final Award ¶ 21.)  Finally, the parties proceeded to arbitrate the merits of Tex-Isle's claims before the Tribunal, which concluded with an evidentiary hearing in New York and an eventual Final Award in Tex-Isle's favor.  (*See* Final Award.)

Based on the record, I find that the parties agreed to submit the question of which document constituted the governing contract to the Tribunal for resolution, and I therefore find that this issue was properly before the Tribunal.  Tex-Isle characterizes Tecnotubi's motion as an improper effort to re-litigate a threshold issue that Tex-Isle itself already consented to when it "unequivocally agreed to submit the preliminary jurisdictional question to the Tribunal." (Doc. 22 at 2.)  I agree.  Although Tecnotubi argues that the Tribunal "exceeded its powers" by deciding that the Toyota PO governed, it fails to address how its own decision to submit this

issue to the Tribunal impacts the question of whether the Tribunal had the authority to decide its jurisdiction in the first place. Despite not addressing that question specifically, both parties acknowledge the "clear Second Circuit caselaw" which emphasizes that "an arbitrator's authority to decide an issue is determined by either the parties' submissions or the arbitration agreement." (Doc. 13 at 7, 8; Doc. 22 at 13.) The parties cite the same case, *Adult Use Holdings Inc. v. FaZe Clan Inc.*, 631 F. Supp. 3d 174 (S.D.N.Y. 2022), to support the proposition that, when a court considers whether an arbitrator had authority to decide an issue by choosing between consulting "the parties' submission" or "the arbitration agreement" itself, both are equally viable options under the law. Despite this apparent consensus, the parties each emphasize the alternative option. Although Tecnotubi is correct that the arbitration agreement may be considered when assessing whether the Tribunal in this case had the power to determine its own jurisdiction, Tex-Isle is also correct that the arbitration agreement itself is not dispositive. (Doc. 22 at 13.) To the extent that Tecnotubi suggests that because the Tecnotubi Contract and the corresponding Swiss arbitration provision is the governing contract, the "arbitration agreement" prevented the Tribunal from holding the arbitration in New York, this argument is circular and presupposes that the Tribunal incorrectly decided which contract governed. Given the plain meaning of the word "or," Tex-Isle is correct to point to the "clear and unmistakable evidence" that the parties jointly authorized the Tribunal to decide the jurisdictional question. (*Id.*)

*Beijing Shougang Mining Investment Co. v. Mongolia*, 11 F.4th 144 (2d Cir. 2021) is instructive. In that case, the petitioners-appellants argued that the parties did not "clearly and unmistakably" agree to submit issues of "arbitrability" to arbitration and, therefore, that the district court erred in declining to review the award de novo. *Beijing*, 11 F.4th at 147. In affirming the district court, the Second Circuit held that regardless of whether the contract at

10

issue assigned the question of arbitrability to the Tribunal, deferential review was appropriate because the parties themselves "put the issue of the arbitrability of their claims to the arbitral tribunal." *Id*. Specifically, the court pointed to the parties' written agreement that the "first phase of the arbitration would cover jurisdictional and liability disputes," which it held itself "was sufficient . . . to evidence the [p]arties' intent to submit arbitrability issues to arbitration." *Id*. at 154. The court also expressed "little doubt then that in agreeing that the tribunal would hear jurisdictional issues, [the petitioners] knew that they were submitting the key issue of arbitrability to resolution by the Tribunal." *Id*. at 155. In considering whether the parties put the issue before the tribunal, the district court distinguished between the facts underlying the arbitration from those examined by the Supreme Court in *First Options*. *See Beijing Shougang Mining Inv. Co. Ltd. v. Mongolia*, 415 F. Supp. 3d 363, 369 (S.D.N.Y. 2019) (citing *First Options*, 514 U.S. at 943–44), *aff'd*, 11 F.4th 144 (2d Cir. 2021). In *First Options*, the respondents sent a single memo disputing the jurisdiction of the arbitrators, then sought de novo review of the arbitrator's decision that the dispute was arbitrable. The district court in *Beijing* stated that, in setting forth the "clear and unmistakable evidence" standard, the Supreme Court found that de novo review was appropriate on the facts before it because the respondents had not "acquiesced to the arbitrator's ability to decide arbitrability." *Id*. (quoting *First Options*, 514 U.S. at 944).

Here, there is no question that Tecnotubi is more like the petitioners in *Beijing*. Indeed, not only did it submit the issue to the Tribunal, but it also fully participated in the arbitration. The Tribunal specifically asked the parties to address whether the jurisdictional issue should be resolved as a preliminary matter. (Downing Decl. Ex. 2 at 1.) When the parties submitted their joint report to the Tribunal, they agreed that the Tribunal "should decide as a preliminary matter

11

which document constitutes the governing contract." (Downing Decl. Ex. 1 at 1.) After the Tribunal issued Procedural Order No. 1, in which it asked the parties for preliminary briefing regarding whether the Toyota Purchase Order or the Tecnotubi Contract governed, and what effect, if any, that answer may have on the Tribunal's jurisdiction, the parties briefed those issues. (Isser Decl. ¶¶ 13–14; Isser Decl. Exs. 6–9.) Tecnotubi then fully participated in the arbitration, arguing their position that the Tecnotubi Contract governed. *See Beijing*, 11 F.4th at 157–58 (finding that a party's conduct in "proceed[ing] to affirmatively argue" their position regarding the arbitrability question "both in their written memorial and at the hearing" demonstrates intent to submit the issue to the tribunal). Accordingly, I find that to the extent the jurisdictional question is one of "arbitrability," it was clearly and unmistakably put before the Tribunal.

### 2. Grounds for Vacatur Under § 10(a)(4)

In failing to address the threshold issue, Tecnotubi does not specifically argue any grounds for vacating the jurisdictional determination itself. Instead, Tecnotubi dedicates much of its motion to second guessing the Tribunal's substantive determination of which contract governed. For example, it sets forth its view of how the Tribunal erred in evaluating the import of Articles 18 and 19 of the United Nations Convention on Contracts for the International Sale of Goods ("CISG") and the letter of credit issued for Toyota by its bank. (Doc. 13 at 11–13.) However, because its argument that Tribunal exceeded its powers in ruling that the Toyota PO was the controlling contract presumes that the Tribunal "got it wrong"—in other words, by presuming that the Tecnotubi's Contract Swiss arbitration provision controls—it fails on its face. As Tecnotubi itself acknowledges, (*see id.* at 7 (quoting *Adult Use Holdings*, 631 F. Supp. 3d at 181)), the question is whether the arbitrators applied the law, "not whether they got [the answer]

right or wrong," *Beijing*, 11 F.4th at 161 (internal quotations omitted and alteration adopted); *see also Anthony v. Affiliated Comput. Servs., Inc.*, 621 F. App'x 49, 52 (2d Cir. 2015) (summary order) ("[W]e do not consider 'whether the arbitrators correctly decided the issue.'" (quoting *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009))).

With respect to the Tribunal's decision that the Toyota PO governed the parties' dispute, Tecnotubi has not identified any grounds for vacatur under Section 10(a)(4), which permits a court to vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). The Second Circuit has "consistently accorded [§ 10(a)(4)] the narrowest of readings." *Anthony*, 621 F. App'x at 50–51. As noted, the "sole question" for the reviewing court is "whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). Here, "[b]ecause the parties bargained for the arbitrator's construction of their agreement," which in this case involved a dispute as to which contract governed, "an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." *Id.* at 569 (internal quotation marks omitted). The Tribunal applied the law set forth in the CISG, which the parties agreed applied, conducted a battle-of-the-forms analysis, and considered the arguments of both parties. There can be no doubt that a 10-page written decision, (*see* Partial Award), reflecting a detailed legal analysis does not "simply reflect the [Tribunals]'s own notions of . . . justice," *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000) (internal quotation marks omitted), and plainly qualifies as an "arguabl[e] interpret[ation]" of the contract, *Oxford Health Plans*, 569 U.S. at 569. Therefore, no grounds for vacatur exist under § 10(a)(4).

13

### 3. Manifest Disregard of the Law

Tecnotubi also argues that (1) the Tribunal's determination that the Toyota PO is the governing contract constitutes a "manifest[] disregard[]" of the law, and (2) that the Tribunal's substantive determinations in issuing the Final Award otherwise demonstrate that the Tribunal "imperfectly executed its powers and/or manifestly disregarded the law." (*See* Doc. 13 at 14.) Both arguments fail.

In arguing that the Tribunal's determination that the Toyota PO is the governing contract constitutes a "manifest[] disregard[]" of the law, Tecnotubi appears to conflate the standard governing this judicial doctrine with the standard under which a court considers whether the "arbitrators exceeded their powers, or so imperfectly executed them" pursuant to § 10(a)(4). Although, as discussed, § 10(a)(4) enumerates four bases for vacatur, under a "severely limited" judicially created doctrine, a court may also vacate an arbitration award if it "manifestly disregarded the law." *Westerbeke Corp. v. Daihatsu Motor Co.,* 304 F.3d 200, 208–09 (2d Cir. 2002). Vacatur is warranted on these grounds only where a district court finds "both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Wallace*, 378 F.3d at 189 (quoting *Banco de Seguros del Estado v. Mut. Marine Off., Inc.*, 344 F.3d 255, 263 (2d Cir. 2003)). A court "is forbidden to substitute its own interpretation [of the relevant law and facts] even if convinced that the arbitrator's interpretation was not only wrong, but plainly wrong." *Local 1199, Drug, Hosp., & Health Care Emps. Union v. Brooks Drug Co.,* 956 F.2d 22, 25 (2d Cir. 1992) (internal quotation marks omitted).

To be clear, the doctrine invoked by Tecnotubi "is considered one of last resort and its use has been limited to only those exceedingly rare instances where some egregious impropriety

14

on the part of the arbitrators is apparent." *Oldcastle Precast, Inc. v. Liberty Mut. Ins. Co.*, No. 16-CV-1914, 2019 WL 1171564, at *4 (S.D.N.Y. Mar. 12, 2019) (internal quotation marks omitted), *vacated in part on other grounds*, 838 F. App'x 649, 651 (2d Cir. 2021). Moreover, "even if an arbitrator makes mistakes of fact or law, [I] may not disturb an award so long as [the Panel] acted within the bounds of [their] bargained-for authority." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 532 (2d Cir. 2016). "[A]n arbitration award is to be confirmed if there is even a 'barely colorable justification' for the decision." *Drywall Tapers & Pointers of Greater N.Y. Loc. Union 1974, IUPAT, AFL-CIO v. Visual Acoustics, LLC*, No. 17-CV-5431, 2018 WL 1596196, at *2 (S.D.N.Y. Mar. 29, 2018) (quoting *U.S. Steel & Carnegie Pension Fund v. Dickinson*, 753 F.2d 250, 252 (2d Cir. 1985)).

Tecnotubi does not even attempt to meet this standard in arguing that the Tribunal manifestly disregarded the law in finding that the Toyota PO governed. Nor could it. In sum, there are no grounds for vacating the Tribunal's determination under either § 10(a)(4) or under the "manifest disregard" doctrine.

With respect to Tecnotubi's argument that the Tribunal manifestly disregarded the law in issuing the Final Award, that argument is based entirely on disagreement with the Tribunal's legal and factual analysis. (Doc. 13 at 15–21.) Specifically, Tecnotubi contends that although the Tribunal was aware that Tex-Isle had the burden of proof, the Tribunal's findings of fact "conclusively demonstrate" that Tex-Isle did not satisfy this burden. (Doc 27. at 7.) Tecnotubi characterizes this as either an imperfect execution of power or a manifest disregard of the law, listing several factual findings that it alleges undermine the Tribunal's ultimate determination. This argument is unavailing. At bottom, mere disagreement with how the Tribunal weighed the evidence cannot establish sufficient grounds for vacatur. *See Wallace*, 378 F.3d at 193 ("[T]he

15

Second Circuit does not recognize manifest disregard of the evidence as proper ground for vacating an arbitrator's award." (internal quotation marks omitted)). To the contrary, the Tribunal's specific factual findings when weighing this evidence indicates more than the required "barely colorable justification" for the Tribunal's decision. *Dickinson*, 753 F.2d at 252. Indeed, "[a] federal court may not conduct a reassessment of the evidentiary record," and "if a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed." *Wallace*, 378 F.3d at 193 (internal quotation marks omitted and alteration adopted). Tecnotubi's challenge to the Tribunal's interpretation of the evidence is not a proper ground for vacatur even under § 10(a)(4), let alone the sort of "egregious impropriety" that would indicate a "manifest disregard" of the law. *Duferco*, 333 F.3d at 389; *see also NDrive, Navigation Sys. S.A. v. LG Elecs. Inc.*, No. 18-CV-5514, 2018 WL 8983479, at *6 (S.D.N.Y. Nov. 8, 2018) (finding plaintiff's "challenge [to] the Tribunal's factual findings in connection with the Tribunal's rejection of the [plaintiff's] adverse inference claim, disguised as a manifest disregard of the law argument" "meritless"). In sum, I find that the Tribunal did not manifestly disregard the law, and decline to vacate the Final Award on this ground.

### B. *Tex-Isle's Motion to Confirm the Final Award*

Given that I do not find that the Award should be vacated on the grounds asserted by Tecnotubi, I now consider Tex-Isle's cross motion to confirm the Final Award. Pursuant to Section 9 of the FAA, after denying a motion to vacate, the Court must confirm the award. *See* 9 U.S.C. § 9 ("[A]ny time within one year after [an arbitration] award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11"); *see also AmeriCredit Fin. Servs., Inc. v. Oxford Mgmt. Servs.*,

16

627 F. Supp. 2d 85, 102 (E.D.N.Y. 2008) ("Upon the denial of a motion for vacatur, the Court must confirm an arbitration award.").

Therefore, the Final Award is confirmed and reduced to a judgment. *See* 9 U.S.C. § 9. The Final Award provided Tex-Isle with pre-award "interest on its damages," with an interest rate of "the average U.S. Prime Rate compounded annually." (Final Award ¶¶ 104–05.) The Final Award also provided post-award interest. (*Id.* at 27 ("Any of the above amounts not paid within thirty (30) days from the date of transmittal of this Final Award shall be subject to U.S. Prime Rate of interest, compounded annually.").)

I also grant the request for post-judgment interest. *See, e.g.*, *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Architectural Metal Concept LLC*, 636 F. Supp. 3d 459, 465 (S.D.N.Y. 2022) (confirming arbitration award and granting post-judgment interest).

### IV.   Conclusion

For the foregoing reasons, Tecnotubi's motion to vacate the Final Award is DENIED and Tex-Isle's cross motion to confirm the Final Award is GRANTED.

The Clerk of Court is directed to enter judgment in favor of Tex-Isle and against Tecnotubi in the amount of: (i) $ 2,234,796.19 in damages and pre-award and post-award interest; (ii) $ 257,382.69[2] in costs; and (iii) post-judgment interest. Post-judgment interest shall accrue at the statutory rate pursuant to 28 U.S.C. § 1961 from the date judgment is entered until payment is made in full.

The Clerk of the Court is respectfully directed to terminate the motions pending at Documents 9 and 21.

---

[2] The Final Award stated that Tecnotubi should be reimbursed $150,125.42 for administrative fees and expenses of the arbitrators, plus $107,257.27 for "other arbitration costs." (Final Award at 27.)

SO ORDERED.

Dated: August 1, 2025
     New York, New York

Vernon S. Broderick
United States District Judge